IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JAMES FINCH | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv026 |
| TEXAS DEPT. OF PUBLIC SAFETY, et al. | § | |

<u>REPORT AND RECOMMENDATION<br>OF THE UNITED STATES MAGISTRTE JUDGE</u>

Plaintiff, a former inmate of the Anderson County Jail, filed a *pro se* complaint under 28 U.S.C. § 1983 complaining that Defendants violated his constitutional by holding him in solitary confinement throughout his incarceration from 2018 to 2020. The lawsuit was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Before the Court is a motion by the Defendants, retired Anderson County Sheriff Greg Taylor and jail administrator Captain T. J. Choate, for summary judgment due to Plaintiff's failure to exhaust administrative remedies. (Dkt. #25.) Plaintiff responded in opposition to the motion (Dkt. #27), and the parties have filed a reply and sur-reply, respectively. (Dkt. ##28, 29.) The motion is thus fully briefed and ripe for review. For the reasons explained below, the undersigned recommends that the motion be denied.

**I. Defendants' Motion and Supporting Evidence**

Defendants move for summary judgment on the basis that Plaintiff failed to exhaust administrative remedies for his claim prior to filing suit. (Dkt. #25.) Specifically, they assert that the Anderson County Jail has a grievance procedure, made known to all inmates through the Anderson County Jail Rules and Regulations handbook, through which inmates may grieve matters

including civil rights violations and unjust denials or restrictions of inmate privileges. (*Id.* at 5.) Those facts are supported by the affidavit of Defendant Choate, who is a jail administrator and custodian of records, and by a copy of the handbook in question. (Dkt. #25-1 at 1–3, 27.) Defendants assert that Plaintiff submitted numerous grievances during his incarceration in the Anderson County Jail, which lasted from August 3, 2018, until September 18, 2020. (Dkt. #25 at 4–5; Dkt. #25-1 at 2, 4.) But they assert that none of Plaintiff's grievances raised any complaint about being held in solitary confinement (Dkt. #25 at 5, 8.) Those facts are also supported by Choate's affidavit and attached copies of Plaintiff's official grievance records. (Dkt. #25-1 at 2–19.) Specifically, Choate testified that "[b]ased on [his] review of the jail records of James Finch, Mr. Finch submitted several grievance forms prior to filing his lawsuit on January 24, 2022, and none of them concerned the claims he is making in this lawsuit." (*Id.* at 3.)

Accordingly, Defendants assert that they are entitled to summary judgment due to Plaintiff's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).

## II. Plaintiff's Response and Further Briefing

Plaintiff contests Defendants' argument in several respects. First, he suggests that he submitted or tried to submit a grievance about his solitary confinement, but that "Defendants were refusing to accept his grievance forms or in many cases even provide them." (Dkt. #27 at 1.) He points to his own comment in one of the grievances submitted by Defendants, in which he complained about a failure to give him requested Tylenol and wrote "please do not 'forward to medical,' they throw them away." (*Id.*; Dkt. #25-1 at 4.) Plaintiff asserts that if he were permitted to contact and gather testimony from certain jail staff members, they would corroborate his assertion about being unable to grieve his solitary confinement. (Dt. #27 at 1–2.) Accordingly,

2

Plaintiff argues that the exhaustion requirement should be deemed satisfied or inapplicable because the jail did not follow its own grievance procedures.

Next, Plaintiff argues that "no 'Administrative remedy' for the severe psychological trauma inflicted upon him even *existed* by the time he filed his first grievance form," because "the damage had already been inflicted," and Defendants could not simply "undo it" with a "magic wand." (*Id.* at 2.)

And finally, Plaintiff asserts that the PLRA's exhaustion requirement does not apply to him because he "is not now, nor was he at the time of filing a 'prisoner'" for purposes of the PLRA. (*Id.*) He cites *Norton v. City of Marietta, Okla.*, 432 F.3d 1145 (10th Cir. 2005), and *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005), for the proposition that the PLRA's exhaustion requirement "does not apply to persons not imprisoned when the suit is filed." (*Id.*)

In reply, Defendants argue that Plaintiff has failed to raise a genuine issue of fact about whether he exhausted his remedies in jail. (Dkt. #28 at 2–3.) But they acknowledge that the Fifth Circuit held in *Bernal v. Bexar County*, 757 F. App'x 316 (5th Cir. 2018), that the PLRA's exhaustion requirement "applies only to people who are currently incarcerated—not to former prisoners." (*Id.* at 3.) Nevertheless, Defendants assert a "good faith argument" that, as a matter of law, "[t]he statute may be easily construed to require administrative exhaustion of any complaint over prison conditions by the prisoner, whether in custody at the time of suit or not." (*Id.* at 4.) They invite such a construction by this Court because allowing a prisoner simply to wait until his release to file suit and avoid the exhaustion requirement would frustrate the PLRA's goals of administratively resolving disputes and reducing prisoner litigation. (*Id.* at 4–5.)

Plaintiff's sur-reply reiterates in pertinent part that the PLRA's exhaustion requirement does not apply to him because he was not a prisoner at the time he filed his complaint. (Dkt. #29.)

3

In fact, Plaintiff explains that he appeared in person at the courthouse to file his pre-prepared complaint and simply did the best he could to fill out the standard Prisoner's Civil Rights Complaint form that the clerk required him to attach to his complaint. (*Id.* at 3.) To the two cases cited in his response, Plaintiff adds seven more cases from other circuits supporting his position that the exhaustion requirement does not apply to former inmates: *Witzke v. Female*, 76 F.3d 744, 750 (7th Cir. 2004); *Cox v. Mayer*, 332 F.3d 422, 424–25 (6th Cir. 2003); *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3rd Cir. 2002); *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002); *Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000); *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999); and *Doe v. Washington County*, 150 F.3d 920, 924 (8th Cir. 1998). (*Id.* at 2.)

### III. Legal Standards

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell,*

4

*Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*, 100 F.3d at 1179.

**IV. Discussion and Analysis**

Congress enacted the PLRA in 1996, mandating that no action shall be "brought . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The statute expressly defines the term "prisoner" to mean "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." *Id.*, § 1997e(h).

It is well-settled that inmates must exhaust any and all administrative remedies before proceeding in federal court. *See Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012) (explaining that pre-filing exhaustion is both mandatory and non-discretionary). The purpose of the prison exhaustion requirement is to "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." *See Bisby v. Garza*, 342 F. App'x 969, 971 (5th Cir. 2009); *see also Patterson v. Stanley*, 547 F. App'x 510, 511 (5th Cir. 2013) (explaining that the primary purpose of a grievance is to give prison officials fair opportunity to address the problem that will later form the basis of the lawsuit); *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004) (interpreting the exhaustion requirement in light of its purposes, which "include the goal of giving officials time and opportunity to address complaints internally.") (internal quotations and citation omitted).

Further discussion of the strict enforcement of the exhaustion requirement is immaterial in this case, however, because the requirement simply does not apply to Plaintiff. As Defendants acknowledge and affirmatively establish, Plaintiff was released from jail on September 18, 2020. (Dkt. #25 at 4; Dkt. #25-1 at 2, 4.) And the record establishes—and Defendants also

acknowledge—that Plaintiff filed his original complaint in January 2022.[1] (Dkt. #2; Dkt. #25-1 at 3.) Accordingly, Plaintiff was not "a prisoner confined in any jail, prison, or other correctional facility" or a "person incarcerated or detained in any facility" at the time he "brought" this action, and he does not fall within the scope of the exhaustion requirement in Section 1997e.

As Plaintiff correctly points out, multiple federal courts of appeal have reached that conclusion. (*See* Dkt. #29 at 2.) The Fifth Circuit has so held unequivocally:

> The sole issue on appeal is whether Bernal had to exhaust all his administrative remedies before suing even though he was no longer a prisoner. The district court dismissed Bernal's complaint because it reasoned that he did have to exhaust his administrative remedies. But as already mentioned, the PLRA bars § 1983 suits filed "by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This restriction thus applies only to people who are currently incarcerated—not to former prisoners. . . .
>
> At the time of his complaint, Bernal was not incarcerated. Rather, he had served his time. And he sued after his release. The district court was wrong that Bernal had to exhaust his administrative remedies. It thus erred in dismissing his complaint.

*Bernal v. Bexar Cnty.*, 757 F. App'x 316, 319–20 (5th Cir. 2018). To even reach that issue, which the appellant had not raised in the district court, the Fifth Circuit had to find that application of the exhaustion requirement to a plaintiff who was free at the time of filing was "obvious error" on a pure question of law that constituted "a miscarriage of justice." *Id.* at 319. Although *Bernal* is not officially published, it is indistinguishable from this case and leaves no room for this Court to reach an opposite conclusion without committing "obvious error."

Defendants apparently disagree with the ruling in *Bernal*, but they do not cite a single case reaching a contrary result. (Dkt. #28 at 3–5.) They argue that the language of Section 1997e does

---

[1] Defendant Choate specifically references Plaintiff's "filing his lawsuit on January 24, 2022," (Dkt. #25-1 at 3), but that was the date on which the Court severed the claims at issue in this litigation from Plaintiff's original lawsuit. (*See* Dkt. #1.) Plaintiff originally filed the complaint that spawned this case on January 19, 2022, in Matter No. 6:22-cv-018. (*See* Dkt. #2 at 1.) Because Plaintiff had been free since September 2020, that discrepancy is immaterial to the Court's analysis.

not clearly support *Bernal*'s conclusion because the drafters "did not add 'at the time the prisoner files suit'" to the text of the statute. (*Id.* at 4.) But neither did the drafters state that the exhaustion requirement applies to one who "is or has been confined" or define the term prisoner to include "any person who is or has been incarcerated or detained." *See* 42 U.S.C. § 1997e(a), (h). The text of Section 1997e is, as *Bernal* and other courts have found, clear and unequivocal about its scope of application.

Defendants' policy arguments also provide no basis to contravene *Bernal*. They argue that "release of the prisoner does not do away with the rationale for exhaustion" and that the law should not be that a prisoner may "lawfully avoid having to raise his or her complaints about prison conditions to prison officials" "[b]y merely waiting until he or she is released from custody." (Dkt. #28 at 4–5.) But, as the Tenth Circuit explained in holding that 1997e applies only to plaintiffs incarcerated at the time of filing, one view of the policies underlying the PLRA supports that construction of its plain text:

> Further, we do not find this reading "an absurd and unjust result which Congress could not have intended," such that we should not apply the plain statutory language in this fashion. *Robbins v. Chronister*, 402 F.3d 1047, 1050 (10th Cir.2005), *reh'g en banc granted*, No. 02–3115 (10th Cir. Aug. 15, 2005). Rather, distinguishing between current and former prisoners "is compatible with the purpose of the PLRA. Prisoners often have an abundance of time, while facing a restricted number of enjoyable activities with which to pass the time other than filing suits." *Witzke*, 376 F.3d at 750; *see also Greig*, 169 F.3d at 167 (noting two senators' statements about the incentives for prisoners to file suit); *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998) ("Congress deemed prisoners to be pestiferous litigants because they have so much free time on their hands and there are few costs to filing suit."). Once a prisoner is released, however, "[o]pportunity costs of litigation rise . . ., diminishing the need for special precautions against weak suits." *Kerr*, 138 F.3d at 323. Applying the plain language of § 1997e(a), we conclude that plaintiff was not required to exhaust his administrative remedies and his case is not subject to dismissal for failure to exhaust.

*Norton v. The City of Marietta, OK*, 432 F.3d 1145, 1150–51 (10th Cir. 2005).

Moreover, regardless of whether distinguishing between current and former prisoners is sensible to Defendants as a matter of policy, the Fifth Circuit has remained firm since *Bernal* that this distinction exists in the law. Accordingly, dismissal for failure to exhaust must generally be without prejudice, to allow "the litigant to refile if he exhausts or is otherwise no longer barred by the PLRA requirements," because the exhaustion requirement would no longer apply if the plaintiff were released:

> This distinction between dismissal with or without prejudice is critical in Bargher's case because he was released from prison during the pendency of this suit. Bargher's subsequent release does not relieve him of the requirement to exhaust administrative remedies for this current legal action that he initiated while in prison. *Williams v. Henagan*, 595 F.3d 610, 619 (5th Cir. 2010) (holding that when plaintiff "was incarcerated when he brought this suit . . . [his] release during the pendency of the suit does not relieve him the obligation to comply with 42 U.S.C. § 1997e['s exhaustion requirements]"). **By its plain language, however, the PLRA's restrictions do not apply to actions filed by former inmates following their release.** 42 U.S.C. § 1997e(a) ("No action shall be brought ... by a prisoner ... until such administrative remedies as are available are exhausted"); s*ee, e.g., Norton v. City of Marietta*, 432 F.3d 1145, 1150 (10th Cir. 2005) ("In light of the PLRA's plain language . . . . a plaintiff who seeks to bring suit about prison life after he has been released and is no longer a prisoner does not have to satisfy the PLRA's exhaustion requirements before bringing suit"); *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005) (per curium) (PLRA's exhaustion requirements do not apply when someone files suit after release from confinement); *Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004) (same); *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999) (same); *Duvall v. Dallas Cty.*, No. CIV.A. 305CV2431B, 2006 WL 3487024, at *2 (N.D. Tex. Dec. 1, 2006) (same); *see also Janes v. Hernandez*, 215 F.3d 541, 542 (5th Cir. 2000) ("Because Janes was not a prisoner when this complaint was filed, the [attorney's] fee limits of the [Prison Litigation Reform] Act did not apply.").
>
> Accordingly, though his present action must be dismissed, **Bargher would not be bound by the PLRA's exhaustion requirements if he were to immediately refile**. *See Cox v. Mayer*, 332 F.3d 422, 424–25 (6th Cir. 2003) (holding that dismissal was required when plaintiff filed unexhausted claims while a prisoner but that his release during pendency of the suit meant he could subsequently refile his claims without exhausting: "no longer in prison, plaintiff ha[s] no remedies to exhaust"); *see also Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002) ("Although Ahmed would have been free of the strictures of the PLRA['s exhaustion requirements] if he had filed a timely complaint after his release from prison, he is bound by the PLRA because his suit was filed . . . almost three years before he was released.").

*Bargher v. White*, 928 F.3d 439, 447–48 (5th Cir. 2019), *as revised* (July 2, 2019) (emphasis added).

Defendants' motion is thus founded on violation of a requirement that does not apply to Plaintiff. They fail to demonstrate that they are entitled to judgment as a matter of law, and their motion should be denied. In light of this conclusion, it is unnecessary to address the parties' dispute about whether Plaintiff effectively grieved or attempted to grieve his solitary confinement while he was in jail.

## RECOMMENDATION

Accordingly, the undersigned recommends that Defendants' motion for summary judgment (Dkt. #25) be **DENIED.**

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 8th day of January, 2023.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE